IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

AUG - 6 2012

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 1:12-MJ-505 |
| | ) | |
| MARCOS SANCHEZ HERNANDEZ, | ) | |
| a.k.a. "Marcos Hernandez Sanchez," | ) | |
| a.k.a. "Markito," | ) | |
| a.k.a. "Marquito," | ) | |
| | ) | |
| Defendant. | ) | |

**AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT AND ARREST WARRANT**

I, Brendan M. Shelley, being duly sworn, depose and state as follows:

**I. INTRODUCTION**

1. I am a Special Agent employed by the United States Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"). I am assigned to ICE Homeland Security Investigations—Washington, D.C., which is located in Fairfax, Virginia. I have been employed as a Special Agent with ICE since October 2007. I am a graduate of the Federal Law Enforcement Training Center's Criminal Investigator Training Program and the ICE Special Agent Training Program. Prior to becoming a Special Agent, I was an ICE Management and Program Analyst with ICE's Office of the Principal Legal Advisor. My duties as a Special Agent for ICE include investigating administrative and criminal violations of the Immigration and Nationality Act, United States customs laws, and violations of the Federal Criminal Code.

2. This affidavit is submitted in support of a criminal complaint and arrest warrant charging Marcos Sanchez Hernandez with Conspiracy to Transport an Individual for Purposes of

Prostitution, namely, that from in and around 2005 to on or about July 28, 2012, in Fairfax County and Prince William County, in the Eastern District of Virginia and elsewhere, defendant Marcos Sanchez Hernandez, knowingly combined, conspired, and agreed with others known and unknown, to commit an offense against the United States, namely, to transport an individual in interstate commerce with the intent that such individual engage in prostitution and sexual activity for which a person can be charged with a criminal offense, in violation of Title 18, United States Code, sections 371 and 2421.

3. This affidavit contains information necessary to support a finding of probable cause and is based on my personal observations during the course of this investigation, information conveyed to me by other law enforcement officials, and my review of records, documents, and other physical evidence obtained during this investigation. This affidavit does not include each and every fact observed by me or known by the government.

## II. THE DEFENDANT

4. Marcos Sanchez Hernandez ("Sanchez Hernandez") is an illegal alien from Mexico who is currently in ICE administrative custody.

5. On July 31, 2012, I conducted a criminal history check of Sanchez Hernandez, which revealed the following information:

    a. On January 13, 2009 in Fairfax County, Virginia, Sanchez Hernandez was arrested for Aiding Prostitution in violation of Virginia Code § 18.2-348. Sanchez Hernandez was convicted and sentenced to 30 days of imprisonment;

    b. On February 16, 2009 in Prince George's County, Maryland, Sanchez Hernandez was arrested for second degree assault. The charge was dismissed;

c. On January 29, 2011 in Prince William County, Virginia, Sanchez Hernandez was arrested for Driving While Intoxicated (First Offense) in violation of Virginia Code § 18.2-266. The disposition for this case has not been received; and

d. Sanchez Hernandez is currently wanted by the Prince William County Police Department for Failure to Appear on a misdemeanor charge.

### III. PROBABLE CAUSE

**A.** **<u>Information Obtained from a Confidential Informant</u>**

6. On or about January 10, 2010, I interviewed a confidential informant ("CI") who has provided reliable information in the past. The CI informed me that an individual named "Markito" operates a prostitution service. I know from this investigation that "Markito" is one of the aliases used by Marcos Sanchez Hernandez. On August 2, 2012, I e-mailed a photograph of Marcos Sanchez Hernandez to the CI and, over the telephone, the CI informed me that this is the individual he knew as "Markito."

7. During the interview of the CI that I conducted in January 2010, the CI stated that:

   a. he met Markito in January 2010;

   b. Markito's prostitution service was one of several prostitution services that belonged to a larger organization;

   c. Markito recruited females to work as prostitutes;

   d. Markito transported the prostitutes from Maryland to Northern Virginia;

   e. Markito directed the prostitutes to have sex with male clients in exchange for money;

   f. Markito instructed the prostitutes to charge $30 for 15 minutes of vaginal sex;

    g.    Markito recruited the CI to work for the interstate prostitution service transporting prostitutes;

    h.    Markito introduced the CI to other individuals who worked for the prostitution service;

    i.    the CI saw Markito drive female prostitutes from Riverdale, Maryland to Woodbridge, Virginia; and

    j.    Markito trained the CI regarding how to pick up prostitutes at their apartments, how to advertise for the prostitution delivery service using business cards, and how to avoid law enforcement detection.

8.    I subsequently interviewed the CI on or about March 8, 2012, April 7, 2012, and July 31, 2012. During those interviews, the CI informed me:

    a.    in and around January through in and around April 2010, the CI worked in close proximity with Markito, for the prostitution business, for approximately three to four months;

    b.    Markito's wife previously was a prostitute whom Markito transported;

    c.    Markito drove the woman who became Markito's wife from Maryland to Virginia so that she could work as a prostitute in Virginia;

    d.    Markito also caused another woman, whose initials are "COG," to work as a prostitute; and

    e.    Markito drove COG from Maryland to Virginia in order for COG to have sex with customers in exchange for money.

**B.**    <u>**Interview of Miguel Santiago Ramirez**</u>

9.    On or about February 24, 2010, I interviewed Miguel Santiago Ramirez ("Santiago Ramirez") at the Alexandria Detention Center in Alexandria, Virginia. At the time of the interview, Santiago Ramirez was in federal custody after having been convicted of

Transporting an Individual for Purposes of Prostitution, in violation of 18 U.S.C. § 2421. During the interview, Santiago Ramirez stated that:

      a.    he worked for an interstate prostitution delivery service;

      b.    Marcos Sanchez Hernandez worked for the same prostitution delivery service; and

      c.    Marcos Sanchez Hernandez was previously arrested for drunk driving.

## C. Interview of GR

10. On or about April 7, 2012 and July 31, 2012, I interviewed a woman whose initials are "GR." She provided details about a man whom she knew as "Markito." On August 3, 2012, I e-mailed a photograph of Marcos Sanchez Hernandez to GR and GR informed me over the telephone that this was a photograph of the man she knew as "Markito." In the interviews of GR that I conducted in April and July 2012, GR stated that:

      a.    GR previously worked for Markito as a prostitute for approximately one weekend in fall 2009 and approximately one week during the early part of 2010;

      b.    Markito would drive GR from Maryland to different locations in Virginia;

      c.    Markito drove GR from Prince Georges County, Maryland to locations in Fairfax County, Virginia, and Prince William County, Virginia for GR to engage in sexual acts with customers for money;

      d.    Markito instructed GR to have sex with men in exchange for money; specifically, Markito instructed GR to charge $30 for fifteen minutes of sex;

 e. GR was required to give Markito the proceeds of the prostitution activity and she was paid a portion of the prostitution proceeds; when GR worked for Markito in early 2010, Markito paid GR at the end of the week;

 f. Markito also drove GR from Riverdale, Maryland to the state of Delaware to work as a prostitute;

 g. Markito drove GR from Riverdale, Maryland to Woodbridge, Virginia to work as a prostitute in Woodbridge;

 h. when she was working as a prostitute, Markito provided GR with condoms and lubrication;

 i Markito encouraged GR to recruit GR's friends to work for Markito as prostitutes;

 j. in and around Spring and Summer 2010, Markito prostituted a woman whose initials are "COG," a woman whose initials are "YC," and a juvenile whose identity is known to law enforcement agents;

 k. Markito drove COG and the juvenile from Riverdale, Maryland to various locations in Virginia for purposes of COG and the juvenile having sex with paying customers;

 l. Markito took over supervision of the prostitution service after the owner of the prostitution service fled the United States in order to avoid arrest; and

 m. generally Markito transported a different prostitute each week for purposes of the prostitutes engaging in sex acts with customers.

### D. Interview of Marcos Sanchez Hernandez

11. On or about August 1, 2012, I interviewed Marcos Sanchez Hernandez at the Dorchester County Detention Center in Dorchester County, Maryland. At the time of the interview Sanchez Hernandez was in ICE administrative custody. Before asking Sanchez Hernandez any questions, I advised him of his *Miranda* rights, in the Spanish language, both

6

orally and in writing. Sanchez Hernandez stated that he understood his *Miranda* rights and that he wished to answer questions without the presence of an attorney. Sanchez Hernandez waived his *Miranda* rights both orally and in writing. Sanchez Hernandez stated:

    a.    he is a citizen of Mexico who is illegally present in the United States;

    b.    he uses the nickname "Markito;"

    c.    he worked for an interstate prostitution delivery service based in Riverdale, Maryland;

    d.    in 2009 he was arrested for a prostitution-related offense in Fairfax County, Virginia; and

    e.    in relation to this 2009 arrest, he had transported a female prostitute from Maryland to Virginia, and the prostitute he had transported to Virginia had sex with male clients in exchange for money; he had instructed the prostitute to charge $30 for fifteen minutes of vaginal sex.

12.    During the interview, Sanchez Hernandez also admitted that he transported other female prostitutes from 2005 through 2011. With respect to these activities, Sanchez Hernandez stated that:

    a.    he would transport different girls each week;[1]

    b.    he picked up girls at the Greyhound bus station in Washington, D.C. at the beginning of the week;

    c.    he then drove the female prostitutes to an apartment in Riverdale, Maryland;

---

[1] During the interview, both Sanchez Hernandez and I used the Spanish language term for "girl." When Sanchez Hernandez used this term, I did not understand Sanchez Hernandez necessarily to mean females under the age of 18 years. I understood him to use this term to refer to females over the age of 18 years and, possibly, females under the age of 18.

    d.    he picked the girls up in the morning and drove them to various locations in Virginia for them to engage in sex acts with paying customers;

    e.    he also drove prostitutes to Delaware to engage in sex acts;

    f.    he instructed the girls to charge $30 for 15 minutes of vaginal sex;

    g.    on Sundays, he took his weekly earnings to the owner of the prostitution delivery business who he would find at a restaurant located in Maryland;

    h.    he and the prostitutes would take in approximately $1,800 to $2,000 per week, which Sanchez Hernandez would turn over to the owner of the prostitution business;

    i.    the owner of the prostitution business then paid Sanchez Hernandez a weekly salary of $500;

    j.    Sanchez Hernandez advertised the prostitution delivery service by distributing business cards to potential customers;

    k.    the business cards would contain telephone numbers and nondescript business names;

    l.    he had previously used cards that said "Articulos Deportivos" and "Computers;" and

    m.    in 2010, he trained an individual (whom I know to be the CI) to be a driver for the prostitution service.

13.    During the interview, I showed Sanchez Hernandez the photographs of six females whom I believe he had prostituted and transported interstate for purposes of prostitution. Sanchez Hernandez indicated that he recognized one of the females and stated that he had transported her into Virginia for purposes of prostitution. As to the other five photographs, Sanchez Hernandez stated that he prostituted different girls every week for many years, and so he could not be expected to recognize every one of them, but that he did not deny that he had

prostituted the females in the photographs. Sanchez Hernandez also identified by name two females whom he prostituted whose photographs I did not show to Sanchez Hernandez.

## IV. CONCLUSION

14. Based on the above-described facts, I respectfully submit that there is probable cause to believe that from in and around 2005 to on or about July 28, 2012, in Fairfax County and Prince William County, in the Eastern District of Virginia and elsewhere, defendant Marcos Sanchez Hernandez, knowingly combined, conspired, and agreed with others known and unknown, to commit an offense against the United States, namely, to transport an individual in interstate commerce with the intent that such individual engage in prostitution and sexual activity for which a person can be charged with a criminal offense, in violation of Title 18, United States Code, sections 371 and 2421.

<u>Signature and Acknowledgment</u>

_____
Brendan M. Shelley
Special Agent
Homeland Security Investigations
U.S. Immigration and Customs Enforcement

Sworn to and subscribed before me on this
6th day of August 2012, at Alexandria, Virginia,

_____/s/_____
John F. Anderson
Honorable John E. Anderson
United States Magistrate Judge