IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | |
| v. | ) ) | Case No. 1:12cr437 |
| MARCOS SANCHEZ HERNANDEZ, | ) ) ) | |
| Defendant. | ) ) | Hon. Gerald B. Lee |

**DEFENDANT'S POSITION ON SENTENCING FACTORS**

Pursuant to Rule 32 of the Federal Rules of Criminal Procedure, Section 6A1.3 of the United States Sentencing Guidelines ("Guidelines"), and this Court's Policy Regarding Procedures to be Followed in Guideline Sentencing, the Defendant, Marcos Hernandez, through counsel, states he has received and reviewed the Pre-Sentence Investigation Report ("PSR") prepared in this case.

On October 15, 2012, Mr. Hernandez entered a guilty plea to Conspiracy to Transport an Individual in Interstate Commerce with the Intent that the Individual Engage in Prostitution. According to the PSR's Guideline calculation, Mr. Hernandez's initial base offense level is fourteen (14). The PSR increases Mr. Hernandez's offense level by three (3) levels pursuant to Section 3B1.1(b) because he played a managerial role in the conspiracy. In addition the PSR increases Mr. Henandez's offense level to by an additional five (5) levels pursuant to Section 3D1.4, because each "victim" is to be treated as a separate count. The PSR notes that Mr. Hernandez is entitled to a reduction from the initial base offense level because he has accepted responsibility and complied with his obligations pursuant to his plea agreement with the

1

Government. Therefore, Mr. Hernandez's final offense level is nineteen (19). Mr. Hernandez's criminal history category is one (I). Thus, his advisory Guideline range for the purposes of sentencing is 30-37 months of incarceration. Mr. Hernandez has no objection to the probation office's calculation of his Guidelines range.

For the reasons set forth below, Mr. Hernandez submits that a sentence of no more than twenty-four months (24) months followed by three (3) years of probation is enough to meet the aims of sentencing.

**APPLICATION OF U.S.C. §3553(a) Factors**

In *Kimbrough v. United States*, 128 S. Ct. 558 (2007), the Supreme Court held that the Sentencing Guidelines are simply an advisory tool to be considered alongside other statutory factors detailed in 18 U.S.C. §3553(a). Courts must consider the recommended guideline range as one of seven co-equal statutory sentencing factors referenced in 18 U.S.C. §3553(a). *United States v. Booker*, 543 U.S. 220, 259-60 (2005). The factors to be considered are: (a) the nature and circumstances of the offense and the history and characteristics of the defendant, (b) the kinds of sentences available, (c) the guideline range, (d) the need to avoid unwarranted sentencing disparities, (e) the need for restitution, and (f) the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide for just punishment for the offense, to afford adequate deterrence, to protect the public from further crimes of the defendant and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment. *See* 18 U.S.C. §3553(a). After considering these factors, the Court has discretion to differ with the U.S.S.G.'s custody range, *See Rita v. United States*, 127 S. Ct. 2456 (2007). Furthermore, the sentencing courts must impose the minimum sentence that is sufficient to accomplish the objectives of §3553(a).

### A. The Nature and Circumstances of the Offense

Mr. Hernandez has accepted responsibility for his actions that violated the laws of the United States.  Mr. Hernandez's role was that of a driver in a conspiracy.  He transported women from an apartment building in Maryland, to various areas where they would engage in prostitution activities.  The women, whom, mostly traveled from New York, would call co-conspirators when they arrived in the Washington D.C. area.  Mr. Hernandez would travel to pick them up and transport them to the apartment in Maryland.  The women would reside there for approximately a week.  During the week, they would travel to various points in the area to engage in prostitution services.  They were paid a sum of money at the conclusion of the week, and then they would move on to another city.  New women would arrive shortly after others exited.  The conspiracy was a revolving door of women who traveled to the area in order to make money from prostitution.

The conspiracy was managed and operated by an individual by the name of Ramon Murillo.  Mr. Murillo recruited Mr. Hernandez and several others as drivers for the women.  Mr. Hernandez was paid a very small wage for his work as a driver.  When Mr. Murillo discovered that he was a target of a federal investigation he fled the country.  He continued to maintain contact with Mr. Hernandez and requested that he continue to transport the women and collect the money.  In fact, an accurate assessment is that the the business "ran itself", and Mr. Hernandez collected the money and arranged for portions to be sent to Mr. Murillo via various different methods.  In the end, Mr. Hernandez's duties at the conclusion of the conspiracy were similar to what they were when he joined.  He was a driver.  He was a means in which women who were intent on making income by providing sexual services made their way to customers.

The Government's position paper identifies around 100 "victims" who were prostituted, but in fact, Mr. Hernandez estimated that it could be around that amount during an interrogation with federal agents, prior to appointment of counsel. It's logical to believe that there were actually not than many women.

B. **The History and Characteristics of the Defendant, the Need to Provide the Defendant with Needed Educational Training, and the Need to Provide Restitution.**

Mr. Hernandez is currently thirty seven (37) years old. He is very cordial, polite, and cooperative. His family and friends would describe him as a loving and caring father.

Mr. Hernandez was born into his family as the youngest of five children. His parents were divorced and his mother worked multiple jobs to support her children. Mr. Hernandez eventually came to the U.S. as an adult in search of opportunities. He worked several jobs in various different states, and eventually settled in Maryland.

Excluding the instant offense, Mr. Hernandez has consistently been a law abiding resident in the United States. Mr. Hernandez attributes his involvement in the instant offense to a bad decision that was made to support his family. Although he has been able to resist the temptation, Mr. Hernandez understands that there were times that he has used alcohol as a coping mechanism. This is illustrated by his arrest for D.U.I. prior to his initial deportation. He is requesting substance abuse counseling while incarcerated, so that he can avoid falling into a cycle of addiction and future bad choices.

The brightest light in Mr. Hernandez's life is his family. Mr. Hernandez met his wife, Rebeca Cuahua, in 2006 and the two started a romantic relationship shortly afterward. The couple share a strong bond and have remained supportive of one another through the years. The have two children together. The oldest daughter is four (4) and the youngest is (1). The children recently traveled to stay with relatives, while their mother is working to financially support the family. The family plans to reunite after Mr. Hernandez is released from imprisonment.

While incarcerated, Mr. Hernandez plans to learn a trade and continue his education. Upon his release, Mr. Hernandez plans to seek gainful employment with the skills that he acquires.

### C. The Need for the Sentence to Reflect the Basic Aims of Sentencing: "just punishment," deterrence, and rehabilitation.

A sentence of twenty-four (24) months is more than enough to accomplish the aims of sentencing. Mr. Hernandez has never spent any time in a prison. A sentence of (24) months is sufficient enough to punish a first time offender and also allows him to rehabilitate himself through vocational programs and education. Mr. Hernandez has agreed to removal from this country, and will have to work to re-establish his family in a new country. He will be more educated and skilled enough to gain legal employment. There is no reason to believe that Mr. Hernandez will ever come before this Court or any other court again.

In speaking to Mr. Hernandez, it becomes abundantly clear that he is determined to rehabilitate himself, so that he will never be in this position again. This includes substance abuse treatment and continuing to advance his education.

### D. The Need to Avoid Unwarranted Disparities

Mr. Hernandez was a driver for women who traveled to this area to make money through illegal means. The women were all adults and used Mr. Hernandez as a way to make their way around this Washington D.C. area to meet men. Mr. Hernandez did not take part in exploitation, assaults, and certainly did not deal in the prostitution of minors. He has no criminal convictions aside from this conspiracy. Thus, it's surprising that the Government is requesting an upward departure from guidelines that already account for a leadership role and multiple victims. Mr. Hernandez's guidelines would be dramatically lower if it were not for the increase due to the

victims. In fact, his Guideline range would be 15-21 months without the increase for victims. If it were not for the leadership role, his Guideline range would be even lower at 10-16 months. The Government's position in requesting an upward departure is to now seek a "double penalty" for actions that the Guidelines have already accounted for. This is piling on and completely inappropriate for a defendant in Mr. Hernandez's position. This is especially true considering that the Government is fully aware of and have taken advantage of Mr. Hernandez's post guilty plea actions. His post guilty plea actions are more deserving of a motion for a downward departure rather than a position for an upward departure.

## CONCLUSION

For the reasons stated above, Mr. Hernandez respectfully requests that this Court impose no more than twenty-four (24) months of incarceration. It is Mr. Hernandez's position that this sentence is sufficient enough to accomplish the objectives of sentencing as detailed in 18 U.S.C. §3553(a). Mr. Hernandez also requests that the Court impose no fine, costs of confinement or supervision given his limited financial resources and inability to pay. Mr. Hernandez also requests that he is allowed to take part in the drug treatment program, and that he be designated to a facility as close to Washington D.C. as possible.

Respectfully submitted,

MARCOS HERNANDEZ
By Counsel

By:_____/s/_____
 Jonathan A. Simms
Attorney for Marcos Hernandez
Simms & Harris, PLLC
11350 Random Hills Road
Suite 800

Fairfax, Virginia 22030
(703) 934-6015
(703) 995-0850 (Fax)
Jsimms_esq@yahoo.com

### CERTIFICATE OF SERVICE

I hereby certify that on December 28, 2012 I will electronically file the foregoing pleading with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Micheal J. Frank, Esq.
Marc Burnbaum
Assistant U.S. Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
(703) 299-3700

Pursuant to the Electronic Case Filing Policies and Procedures, a courtesy copy of the foregoing will be delivered to Chambers within one business day of the electronic filing. A courtesy copy also will be delivered to the assigned U.S. Probation Officer, Third Floor, 401 Courthouse Square, Alexandria, Virginia, 22314.

By: _____/s/_____
Jonathan A. Simms
Attorney for Marcos Hernandez
Simms & Harris, PLLC
11350 Random Hills Road
Suite 800
Fairfax, Virginia 22030
(703) 934-6015
(703) 995-0850 (Fax)
Jsimms_esq@yahoo.com